**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

RHONDA N.[1],                                        Case No. 1:25-cv-299
        Plaintiff,                                   Litkovitz, M.J.

    vs.

COMMISSIONER OF                                      **ORDER**
SOCIAL SECURITY,
        Defendant.

Plaintiff Rhonda N. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI).  This matter is before the Court on plaintiff's statement of errors (Doc. 10), the

Commissioner's response in opposition (Doc. 14), and plaintiff's reply (Doc. 15).

**I.  Procedural Background**

Plaintiff filed applications for DIB and SSI on September 7, 2021, alleging disability

since June 20, 2016, due to a back disorder, diabetes, hypertension, asthma, and obesity.  (Tr. 17,

318).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ)

Christopher Tindale.  Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing on February 26, 2024.  (Tr. 35-50).  On May 14, 2024, the ALJ issued a decision

denying plaintiff's applications.  (Tr. 14-28).  This decision became the final decision of the

Commissioner when the Appeals Council denied review on March 28, 2025.  (Tr. 1-3).

**II.  Analysis**

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).[2]  The claimant has the burden of proof at the first four

---

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Order.

steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2021.

2. [Plaintiff] has not engaged in substantial gainful activity since June 20, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: disorders of the spine, obesity, asthma, and a mood disorder (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  Can occasionally balance (as defined by the SCO), stoop, kneel, crouch, and crawl.  Avoid even moderate exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  Must avoid all exposure to dangerous hazards.  [Plaintiff] retains the ability to sustain routine tasks in a setting where production demands are flexible.  [Plaintiff] retains the ability to interact with others on an occasional basis, but no tandem tasks, no customer service duties, no negotiation, and no supervising others.  [Plaintiff] retains the ability to work in a setting where daily duties are relatively static.

6. [Plaintiff] is capable of performing past relevant work as a line worker and a van driver. This work does not require the performance of work related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 20, 2016, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 20-27).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1004 (6th Cir. 2025) ("Even when an ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations.") (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)).

### D.  Specific Errors

Plaintiff raises two assignments of error.  First, she argues that the ALJ's residual functional capacity (RFC) determination fails to account for the moderate limitation in concentrating, persisting, or maintaining pace determined at step 3 of the sequential evaluation process, and this failure is not explained in the ALJ decision.  Second, she argues that the ALJ's conclusion that she could perform her past relevant work is inconsistent with the ALJ's RFC determination.

1.  <u>The ALJ's RFC determination accounting for moderate limitation in concentrating, persisting, or maintaining pace is supported by substantial evidence.</u>

Plaintiff argues that despite finding moderate limitation in the area of concentrating, persisting, or maintaining pace, the ALJ included "no mental restrictions" in his RFC determination.  (Doc. 10 at PAGEID 954).  Plaintiff also argues that the VE hypothetical did not accurately depict her limitation in the area of concentrating, persisting, or maintaining pace. Plaintiff argues that an accurate hypothetical would have eliminated plaintiff's past work at step 4 of the sequential evaluation process.

The Commissioner argues that after the ALJ uses the psychiatric review technique (PRT) for steps 2 and 3 of the sequential evaluation process, he is to translate those findings "into more detailed work-related functional limitations" at step 4 (the RFC determination).  (Doc. 14 at PAGEID 974).  The Commissioner argues that the RFC limitations to "sustain[ing] routine

tasks" with "flexible" production demands and "relatively static" daily duties adequately accounted for the moderate limitation the ALJ found in the area of concentrating, persisting, or maintaining pace. (Tr. 23). The Commissioner emphasizes that greater functional limitation, such as a limitation to simple work, is not dictated by the definition of "moderate limitation" under the regulations or the evidence of record. Finally, the Commissioner notes that plaintiff did not challenge the ALJ's evaluation of state agency psychological examiner David Dietz, Ph.D., whose mental limitations (as relevant here) the ALJ found persuasive and incorporated into the RFC determination. (*See* Tr. 26).

In reply, plaintiff argues that the Commissioner did not adequately distinguish *Lori F. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-cv-319, 2024 WL 898934 (S.D. Ohio Mar. 1, 2024)—a case she cited for the proposition that an ALJ must explain how an RFC determination accounts for limitations in the four mental functioning areas. She also argues that the limitations the ALJ included in his mental RFC determination went to plaintiff's ability to adapt or manage herself and not her ability to concentrate, persist, or maintain pace. Plaintiff also argues that the cases on which the Commissioner relies to show that the ALJ adequately incorporated plaintiff's limitation in the mental functioning area of concentrating, persisting, and maintaining pace are inapposite.

Section 404.1520a governs the evaluation of mental impairments at steps 2 and 3 of the sequential evaluation process and establishes a "special technique" (PRT) to be employed for that purpose. 20 C.F.R. § 404.1520a(a). As relevant here, the agency is to rate a claimant's degree of functional limitation in four broad functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself, i.e., the "Paragraph B" criteria of the Listings for mental impairments) according to a

6

five-point scale (none, mild, moderate, marked, and extreme).  20 C.F.R. §§ 404.1520a(c)(3), (4).  The ALJ's decision "must include a specific finding as to the degree of limitation in each of the[se] functional areas. . . ."  20 C.F.R. § 404.1520a(e)(4).

This special technique for reviewing mental impairments is not tantamount to the RFC determination:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria [relevant to adult mental disorder listings] *are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process*.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

Social Security Ruling (SSR)[3] 96-8P, 1996 WL 374184, at *4 (July 2, 1996) (emphasis added).

The ALJ's RFC determination as it relates to plaintiff's moderate limitation in concentrating, persisting, or maintaining pace is based on substantial evidence.  The ALJ determined:

> The state agency "B" criteria assessments are persuasive because they are consistent with the medical record (see B criteria analysis above).  However, the state agency mental residual functional capacities are only somewhat persuasive. While they are fairly consistent with the record, they contain some vague language that is not policy compliant, which reduces its overall persuasiveness.  As such "superficial" was removed and changed to "occasional interaction", but no tandem tasks, no customer service duties, no negotiation, and no supervising others were added.  These restrictions limit both the type and length of interaction.  As detailed above, the record indicates the claimant has fairly intact activities of daily living (see B criteria) and examinations often noted mostly normal findings such as normal/appropriate mood, affect, and/or behavior (Exhibits 1F/69, 4F/15, 35, *for example*).

(Tr. 26).

---

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

State agency psychologist Irma Johnson, Psy.D., assessed the "B" criteria for the Listings and determined plaintiff was mildly limited in her ability to understand, remember, or apply information.  Dr. Johnson also opined that plaintiff was moderately limited in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself were each moderately limited.  (Tr. 76).  When she assessed plaintiff's mental RFC in the area of "Sustained Concentration and Persistence Limitation," Dr. Johnson opined that plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 81).[4]  Narratively, Dr. Johnson concluded that plaintiff "retains the ability to sustain routine tasks in a setting where production demands are flexible."  (*Id.*).

The ALJ specifically incorporated into plaintiff's mental RFC Dr. Johnson's assessment that plaintiff "retains the ability to sustain routine tasks in a setting where production demands are flexible" (Tr. 23) to account for plaintiff's moderate limitation in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"—the only functional area under "Sustained Concentration and Persistence Limitation" that Dr. Johnson found plaintiff had a specific limitation (Tr. 81).[5]  Plaintiff does not challenge the ALJ's

---

[4] Dr. Johnson found that plaintiff was not significantly limited or had no evidence of limitation in any of the seven other functional areas under "Sustained Concentration and Persistence Limitation."  (*Id.*).

[5] The cases plaintiff cites to support her position that the ALJ did not adequately explain how his finding of moderate limitation in this functioning area translated to his RFC determination are distinguishable.  The ALJs in those cases omitted *any discussion* of an impairment in the RFC analysis or *any functional limitations at all* related to identified impairments.  *See Hargis v. Comm'r of Soc. Sec.*, No. 1:25-cv-00832, 2026 WL 16456, at *11-12 (N.D. Ohio Jan. 2, 2026) (remand warranted the ALJ found several bilateral-extremity related impairments but did not discuss them at all beyond step 2 of the sequential evaluation process) (report and recommendation), *adopted*, 2026 WL 228667 (N.D. Ohio Jan. 28, 2026); *Lori F.*, 2024 WL 898934, at *3 ("[T]he RFC does not have *any* mental limitations, and the ALJ does not explain why *no* limitations are present.") (emphasis added); *Tracy G. v. Comm'r of Soc. Sec.*, No. 22-cv-12308, 2023 WL

findings or the ALJ's persuasiveness determination.[6]  Plaintiff has no other limitations in sustained concentration and persistence that were not accounted for by the ALJ. [7]

To the extent plaintiff argues that a moderate limitation in this mental functioning area must be equated to "simple work" (*see* Doc. 10 at PAGEID 956 ("The VE was not asked to assume a limitation to simple tasks. . . .  [T]he hypothetical . . . failed to accurately depict the mental restrictions in maintaining concentration, persistence or pace. . . .")), this argument is unpersuasive.  Moderate limitation is defined as when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c).  The mental functioning limitations the ALJ included in his RFC determination are consistent with this definition, and plaintiff fails to point to any particular part of the record justifying further restriction.  The Commissioner, by contrast, points to substantial evidence referenced by the ALJ supporting his RFC limitation to routine tasks as opposed to simple work.  (*See* Tr. 22 and 24 referring, e.g., to Tr. 566-71 (October 28, 2022 psychological examination) and Tr. 881-90 (October 21, 2020 disability assessment), which reflect no significant problems in concentrating, persisting, or maintaining pace and instead reflect that plaintiff can watch television, perform household chores, grocery shop, use public transportation, and maintain normal speech, thought processes and conversation during examinations).

---

8723691, at *9 (E.D. Mich. Nov. 27, 2023) (remand warranted where the plaintiff had mental impairments but, without explanation, no mental limitations were included in the RFC) (report and recommendation), *adopted*, 2023 WL 8722012 (E.D. Mich. Dec. 18, 2023).

[6] In reply, plaintiff argues that the limitation to "routine tasks where production demands are flexible" is an Adaptation Limitation.  (*See* Doc. 15 at PAGEID 985-86).  As explained above, however, this is inconsistent with the state agency's opinion, which used this exact language to describe plaintiff's limitation in the area of "Sustained Concentration and Persistence."  (Tr. 81) .

[7] Plaintiff raises no arguments as to the areas of Social Interaction Limitation or Adaptation Limitation.  Thus, any such arguments are waived.  *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

The ALJ's RFC limitation to routine tasks in a setting where production demands are flexible adopts Dr. Johnson's opinion on plaintiff's "Sustained Concentration and Persistence Limitation." Plaintiff does not challenge that opinion or the ALJ's assessment thereof. Substantial evidence supports the ALJ's consideration of plaintiff's moderate limitation in concentrating, persisting, and maintaining pace. This assignment of error is overruled.

2. <u>Past relevant work</u>

The VE testified that plaintiff has past relevant work as line worker (Dictionary of Occupational Titles (DOT) #706.687-010), classified as light and unskilled work, and as a van driver (DOT #905.663-018), classified as very heavy but which she actually performed as light work. (Tr. 47). Based on the hypothetical ultimately used by the ALJ in his RCF determination, the VE testified that plaintiff could perform her past relevant work. (Tr. 47-48). The ALJ determined that plaintiff could perform her past relevant work as a line worker as generally performed and as a van driver as actually performed. (Tr. 27).

Plaintiff argues that the ALJ failed to resolve two conflicts between the VE's testimony and the DOT. First, with respect to plaintiff's past relevant work as a line worker, she argues that the corresponding DOT code is inconsistent with the RFC's limitations to flexible production demands and no exposure to dangerous hazards. Second, with respect to van driver, plaintiff argues that the corresponding DOT code is inconsistent with the RFC's limitation to a job where daily duties are relatively static. Plaintiff argues that she has identified "clear and specific" conflicts that the ALJ failed to resolve, constituting error. Plaintiff further argues that because the VE's testimony created these conflicts, all of the VE's subsequent testimony was rendered unreliable.

10

The Commissioner argues that the ALJ was entitled to rely on the VE's opinion because the ALJ asked the VE whether his testimony was consistent with the DOT, and the VE replied in the affirmative except with respect to "factors such as absence or off task" that are not relevant here. (Tr. 49). Regardless, with respect to the occupation of line worker in particular, the Commissioner argues that there was no conflict because the DOT does not squarely address production requirements, and the occupation does not involve exposure to hazards. With respect to the occupation of van driver, the Commissioner argues that there was no conflict because, according to plaintiff, she actually performed the job by "s[i]t[ting] on [her] but[t] and dr[iving] all day." (Tr. 401 (Work History Report)).

In reply, plaintiff argues that the Sixth Circuit has held that an ALJ "might reversibly err by failing to inquire about or resolve a conflict. . . ." *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016).

At step-four of the sequential evaluation process, the ALJ considers past relevant work. If a claimant "can still do [past relevant work], [the agency] will find that [the claimant] is not disabled." 20 C.F.R. § 404.1520(f). SSR 82-61 identifies three possible tests for determining whether a claimant retains the capacity to perform his past relevant work. These include: (1) whether the claimant "retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job"; (2) whether the claimant "retains the capacity to perform the particular functional demands and job duties" of his past job as he "actually performed it"; and (3) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *1-2 (Jan. 1, 1982). Under the second test, the claimant should be found to be "not disabled" if the evidence shows that she retains the RFC to

11

perform the functional demands and job duties of a past relevant job as she actually performed it.

*Id.* at *2.  Under the third test, the DOT can be used to define the job as it is usually performed in

the national economy, although "[i]t is understood that some individual jobs may require

somewhat more or less exertion than the DOT description."  *Id.* at *3.  The Ruling clarifies:

> A former job performed [ ] by the claimant may have involved functional demands
> and job duties significantly in excess of those generally required for the job by other
> employers throughout the national economy.  Under this test, if the claimant cannot
> perform the excessive functional demands and/or job duties actually required in the
> former job but can perform the functional demands and job duties as generally
> required by employers throughout the economy, the claimant should be found to be
> "not disabled."

*Id.*

Plaintiff's assignment of error is premised on (1) conflicts between the VE's testimony

and the DOT, and (2) the ALJ's failure to acknowledge and resolve them.  With respect to line

worker, plaintiff argues that the DOT's definition of this occupation as entailing "repetitive

bench or line assembly operations to mass-produce products" is inconsistent with the RFC's

limitation to flexible production demands, and its references to "tend[ing] machines" and

performing "force fitting or fastening" are inconsistent with the RFC's prohibition against all

exposure to dangerous hazards.[8]  *See* DICOT 706.687-010 (G.P.O), 1991 WL 679074 (4d ed.

1991).

The Court finds no conflict between the RFC's prohibition against all exposure to

dangerous hazards and the VE's testimony that plaintiff could perform her past work of line

worker.  Despite the DOT definition's reference to machinery, in the section breaking down line

---

[8] According to SSR 96-9p, 1996 WL 374185 (July 2, 1996), "hazards," as defined in the Selected Characteristics of
Occupations, include "*moving mechanical parts of equipment, tools, or machinery*; electrical shock; working in
high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals."  *Id.*
at *9 (emphasis added).

worker into specific vocational elements, it clarifies: "Moving Mech. Parts: Not Present - Activity or condition does not exist." *Id.*

The analysis is less clear with respect to the alleged conflict between a line worker's duties and the RFC's limitation to flexible production demands. Neither party identifies case law or other authority to shed light on whether this situation presents a conflict,[9] and the Court did not locate any. Even assuming a conflict, however, "[i]n this circuit, an ALJ satisfies h[is] duty to inquire if [ ]he asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response." *Joyce*, 662 F. App'x at 435.[10] *See also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("[T]he ALJ asked if there was a conflict. The vocational expert testified that there was not. Martin did not bring the vocational expert's mistake to the ALJ's attention. Nothing in SSR 00-4p[11] places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.") (citations to the record omitted) (footnote added); *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (following *Martin*, where the ALJ did not inquire as to conflicts, but the plaintiff's counsel asked the VE about his source (the DOT) and did not raise any conflict); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (following *Martin*, where the ALJ asked whether there were "any apparent discrepancies" between the DOT and the VE testimony (there were none), and the plaintiff's counsel had an opportunity for cross examination). That is exactly what occurred here. (*See* Tr. 49 ("Q. Is your testimony consistent

---

[9] The Commissioner only states that the DOT "does not specifically address production requirements." (Doc. 14 at PAGEID 980, n.4).

[10] Plaintiff's attempt to distinguish *Joyce* is unavailing. The Court found that the ALJ in *Joyce* procedurally erred because, unlike here, he *did not* ask about any potential conflict. *Id.* at 435-36.

[11] SSR 00-4p states, in relevant part, "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at *2 (Dec. 4, 2000).

with the <u>Dictionary of Occupational Titles</u>?" A. It is except in discussion of factors such as absence or off task.")). Although given the opportunity to question the VE about his testimony, plaintiff's representative declined. (Tr. 49-50).

With respect to van driver, plaintiff argues that various elements of this occupation's definition, such as "navigating traffic, finding previously unknown destinations, handling of customer collections, and adjusting for delicate or fragile cargo" are inconsistent with a limitation to relatively static duties. (Doc. 10 at PAGEID 959-60). Here again, the parties do not present case law or other authority to shed light on whether this situation presents a conflict.[12] Regardless, however, the ALJ's explicit inquiry into the consistency of the VE's testimony with the DOT and plaintiff's failure to raise a conflict at the administrative level demonstrate that the ALJ's finding at step 4 of the sequential evaluation process is supported by substantial evidence for the reasons discussed above. Plaintiff's second assignment of error is overruled.

## III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 10) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:   6/30/2026

_____
Karen L. Litkovitz
United States Magistrate Judge

---

[12] At most, the Commissioner argues that ALJs are permitted to find a plaintiff able to perform past relevant work not only as described by the DOT but also as it was actually performed by a plaintiff. *See* SSR 82-61, 1982 WL 31387, at *1-2. But the VE's testimony was that the discrepancy between the DOT definition and the job as actually performed related to the exertional level (very heavy vs. light) (*see* Tr. 80)—not specific vocational elements.

14